

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00461-CR

Alexander William **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-7294
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:　Sandee Bryan Marion, Justice

Sitting:　　Catherine Stone, Chief Justice
　　　　　　Sandee Bryan Marion, Justice
　　　　　　Rebeca C. Martinez, Justice

Delivered and Filed:　January 30, 2013

AFFIRMED

A jury found appellant, Alexander W. Johnson, guilty of the murder of Josue Barrera-Torres; and the trial court assessed punishment at life in prison. In a single issue on appeal, appellant asserts he is entitled to a new sentencing hearing because the trial court was not an impartial adjudicator. We affirm.

## STANDARD OF REVIEW

"Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). "Absent a clear showing of bias, a trial court's

actions will be presumed to have been correct." *Id.* "A judge should be fair and impartial and not act as an advocate for any party" or as "any party's adversary." *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, "a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Judicial rulings alone almost never constitute a valid basis for a bias unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* at 240.

## DISCUSSION

In his "Summary of the Argument" in his brief on appeal, appellant contends the trial judge was not a neutral and detached judicial officer who considered the full range of punishment and mitigating evidence before assessing punishment. However, in the substantive portion of his argument on appeal, appellant does not return to this allegation except for the conclusory statement that the trial court "did not discuss or show any indication that she considered the lesser range of punishment of voluntary manslaughter." Appellant does not point to any instance in the record of the trial court refusing to consider the full range of punishment, he does not offer any proof to show that the trial court was biased in this case or that its judgment was somehow predetermined, and he does not point to any place in the record where defense counsel objected to the sentence as being disproportionate or constitutionally improper. Nor was this complaint raised in any motion for new trial.[1] Instead, appellant bases his argument on various rulings made by the trial court.

Appellant asserts the trial court was impartial because "the record is silent as to why the trial court did not consider a finding that Appellant's actions constituted voluntary manslaughter." According to appellant, he shot Josue after Randi Flores, whom he believed to

---

[1] Neither the clerk's record nor the trial court docket sheet indicates a motion for new trial was filed.

be his girlfriend, had rebuked him, and Josue pointed a gun at him. Therefore, appellant argues he was entitled to have sudden passion considered during the punishment phase of trial and a lesser sentence imposed.

At the punishment stage of a trial, a defendant may raise the issue of whether he caused "the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* The Penal Code defines "adequate cause" and "sudden passion" as follows:

> (1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

> (2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

*Id.* § 19.02(a).

During the guilt-innocence phase of trial, appellant testified on his own behalf. He said he and Randi Flores both worked for University Health System. Appellant said he and Randi were friends and that he had feelings for her. When he was told she was dating someone else, he was "bothered," but not upset. In the evening of May 13, 2010, appellant drove to an apartment complex to see Randi. While in the parking lot of the complex, he asked Randi if she was "with Andy now," she replied "yes," and appellant said "okay" and then drove away.

At some point in the evening, appellant drove to another apartment in search of some of his belongings. He asked Alexa Alvarez if she had any of his clothes or shoes, she said she did not, and he asked if he could come inside to look. Alexa said no because she did not feel comfortable with him in her house without Randi. Appellant told Alexa he "and Randi aren't

talking anymore. That's why I came back by myself." He left Alexa's house and drove around, but he testified he was not upset. A few hours later, he returned to the apartments where he had earlier spoken to Randi to meet with Randi's mother who said she had some of his belongings.

While waiting in his car for Randi's mother, he saw a truck and two cars full of people and he thought to himself, "Something like this is not good. . . . Be careful." Appellant said Josue walked up to appellant's car and asked "What the, 'blank,' are you doing? What the F are you doing back here?" Appellant said Josue had his hands in his pockets as he was walking, as if he were holding his pants up under his shirt. Appellant said he asked Josue if he had his "stuff," to which Josue replied "Yeah, I got something for you," and Josue pulled out a gun. Appellant said he then reached for his gun and started firing, and then he drove away. Appellant could not remember how many times he fired, and he said he was terrified. Appellant was arrested at approximately 3:00 a.m. the next morning. On cross-examination, appellant said he knew Josue and that Josue was a "good guy," but "if he wouldn't have did what he did, then I would never have done that." Appellant said he shot Josue because Josue pointed a gun at him and he felt justified in shooting Josue because he believed his own life was in danger.

During closing arguments, defense said appellant went to the apartments to see Randi, "to talk to the girl he thought once loved him." Counsel argued appellant had no motive to shoot Josue, appellant was not at the apartments to look for Josue, and the only reason he shot Josue was because "Josue came up to him." Counsel did not argue sudden passion. The jury was provided instructions on self-defense, but did not find in appellant's favor. At the sentencing hearing, defense counsel argued there was no planning or premeditation on appellant's part, and asked the trial court to consider "that time really has a significance" when determining the length of the sentence.

A trial court is obligated to instruct the jury on sudden passion only when the evidence supports such a finding. *Benavides v. State*, 992 S.W.2d 511, 524-25 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Very little evidence is needed to reach this threshold. So long as the record contains some evidence to support a sudden-passion charge—even if that evidence is weak, impeached, contradicted, or unbelievable—the jury should receive a sudden-passion instruction. *See McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury. *Id.*

In this case, the trial court assessed punishment, not the jury. We conclude, on this record, that the facts do not support a finding that appellant shot Josue under the immediate influence of sudden passion arising from his being "rebuked" by Randi. We also conclude nothing in the record supports appellant's argument that the trial court did not consider a lesser range of punishment.

## QUESTIONING AND COMMENTS BY THE STATE

In a variety of sub-issues, appellant asserts the trial court was biased because it improperly allowed the State to ask certain questions and to make side-bar comments. Therefore, appellant contends he is entitled to a new sentencing hearing because the trial court was not impartial. Appellant first complains about a side-bar comment made by the prosecutor and argues, on appeal, "the court was not asked to disregard the question." However, the trial court sustained defense counsel's objection to the prosecutor's comment and, because sentencing was before the trial court and not the jury, an instruction to disregard would have been of little use. Therefore, appellant's argument that this instance shows bias by the trial court lacks support in the record.

Appellant next complains the trial court erred by overruling defense counsel's relevance objection when the State asked appellant's sister what she felt an appropriate sentence should be. During defense counsel's direct examination of appellant's sister, Aurie Johnson, defense counsel asked Aurie what she would like the trial court to consider before sentencing. She responded that she knew her brother's potential and he "just needs another opportunity to show everybody." She hoped her brother had the opportunity to reach his potential. On cross-examination by the State, the State asked:

> Q.    So let's turn the tables around and say someone murdered your brother.
>
> A.    Okay.
>
> Q.    What do you think should happen to that person?
>
> A.    Depends on the circumstances.

At this point, defense counsel objected to the relevancy of the question, and the objection was overruled.

The State then continued, without objection from the defense:

> Q.    Okay. Assuming somebody drove up in a car after having an altercation with people, your brother comes up to try and talk to that person, and before he even makes it to the car, that person shoots your brother in the head, twice in the chest and once in the throat and then lies about it. What should happen to that person?
>
> A.    I'm not in a place of judgment to say what should happen to somebody.
>
> Q.    Well, you're telling this Court what you think should happen to your brother.
>
> A.    I'm asking for [the court] to consider giving him that potential, to let him reach his potential, that's all I'm asking. I'm not passing judgment on anybody.
>
> Q.    That potential he took away from Josue?
>
> A.    Everybody deserves a second chance.

On this record, we cannot say the trial court showed any bias by overruling defense counsel's objection, which we note was not raised until after Aurie had already answered the question. *Dinkens v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (holding objection following answer untimely). We also note Aurie did not answer the question because she did not state what she believed the sentence should be given the prosecutor's hypothetical.

Appellant next complains the trial court showed bias by allowing the State to impeach him with evidence of his expulsions from school, fights at school, and his taking brass knuckles to school. This line of questioning, which was elicited during the State's cross-examination of appellant's father, was not objected to by defense counsel. Therefore, this complaint is waived. TEX. R. APP. P. 33.1(a). Appellant also complains the trial court should not have allowed the State to ask him what kind of punishment he would recommend if someone shot his sister. Again, defense counsel did not object; therefore, this complaint is waived. *Id.* Finally, appellant contends the majority of the State's case during the punishment phase consisted of victim impact statements, which he characterizes as cumulative and excessive. Defense counsel raised no objection to the witnesses' testimony about Josue; therefore, this complaint is waived. *Id.* Because appellant failed to object to the complained-of alleged errors, he failed to preserve error relating to his complaint regarding the trial court's alleged bias and sentencing determination.

Appellant complains the trial court overruled "argumentative" objections to comments by the prosecutor. The first comment occurred during the State's examination of appellant when appellant denied knowledge of another shooting and the prosecutor said: "Kind of sounds like what you were telling [the detectives] about the murder, too. You don't know anything . . . ." The next complained-of comment occurred when appellant denied knowledge of how ammunition and a gun were found in his bedroom:

Q.     How did that [ammunition] get there?

A.     I don't know, sir.

Q.     Was that your revolver that was found in your bedroom?

A.     No, sir.

Q.     How did it get there?

A.     I don't know, sir.

Q.     You're just not going to admit to really doing anything wrong ever, are you?

A.     I've already admitted enough.

Q.     Enough for what?

A.     I'm not going to admit to anything that I didn't do.

Q.     Well, you won't admit to things that you do either; is that right?

Defense counsel objected that "this was argumentative," and the trial court responded, "It's cross-examination, Counsel.  It's overruled."

We conclude nothing about the above rulings indicate bias or a deep-seated favoritism or antagonism that would make fair judgment impossible.

Next, without pointing to any specific portion of the record, appellant contends the trial court allowed the State "to continually comment on [his] right to post arrest silence."  Appellant argues the State may not use a defendant's post-arrest silence to impeach or discredit a defendant's exculpatory theory, including a self-defense claim elicited for the first time at trial. *See Dinkins*, 894 S.W.2d at 356.  Without further explanation, appellant then states the trial court viewed the entire videotaped interrogation of appellant during the punishment phase in violation of this "well known legal authority."  This complaint is waived as inadequately briefed.  *See*

TEX. R. APP. P. 38.1(i) (requiring that appellant's brief contain a clear and concise argument for contentions made, with appropriate citations to authorities and to the record).

In his final complaint, appellant contends the trial court imposed the maximum punishment of life after considering inadmissible and prejudicial evidence of the burglary of a habitation. Alfred Vega testified that after he gave his statement to the police the night of the murder, he returned home to discover his house had been broken into. He noticed his laptop was missing, and Randi's room ransacked. He said every other room was clean except hers. When defense counsel asked about the relevance of these questions, the State responded that the manner in which the house was broken into and the damage to the door likely correlated to a screwdriver found in the back of appellant's vehicle. According to appellant, the State implied he committed the burglary because Randi's room was the only room ransacked, property was missing, someone had pried open the front door to gain entry, and a screwdriver was found in his vehicle. On this record, we cannot say the trial court showed any bias by allowing the questions because nothing in the record supports appellant's contention that the trial court based its sentencing on Vega's testimony.

## CONCLUSION

We conclude appellant has not overcome the presumption of impartiality on the basis of mere speculation. *See Brumit*, 206 S.W.3d at 644-45 (rejecting challenge to trial court bias where record did not reflect partiality). Therefore, we overrule appellant's objections that the trial court was not neutral and detached, and we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish